**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**SOUTHEASTERN DIVISION**

| | | |
|---|---|---|
| **JAMIE D. HUBBARD,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **V.** | ) | **Case No. 1:12CV165NCC** |
| | ) | |
| **CAROLYN W. COLVIN,** | ) | |
| **Acting Commissioner of Social Security,** | ) | |
| | ) | |
| **Defendant.**[1] | ) | |

## MEMORANDUM AND OPINION

This is an action under Title 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner denying the application of Jamie D. Hubbard (Plaintiff) for Supplemental Security Income (SSI) under Title XVI of the Act, 42 U.S.C. §§ 1381 et seq. Plaintiff has filed a brief in support of the Complaint. Doc. 16. Defendant has filed a brief in support of the Answer. Doc. 21. The parties have consented to the jurisdiction of the undersigned United States Magistrate Judge pursuant to Title 28 U.S.C. § 636(c). Doc. 23.

### I.
### PROCEDURAL HISTORY

Plaintiff filed her application for SSI alleging a disability onset date of July 6, 1995. Tr. 172-76. Plaintiff's application was denied and she requested a hearing before an Administrative Law Judge (ALJ). Tr. 91-98. Plaintiff amended her alleged onset date to September 5, 2008. Tr. 198. After both a hearing and a supplemental hearing, the ALJ found Plaintiff not disabled by decision dated January 28, 2011. Tr. 11-19. Plaintiff filed a request for review with the

---

[1] Carolyn W. Colvin became Acting Commissioner of Social Security on February 14, 2013. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, she should be substituted for Michael J. Astrue as the defendant. No further action need be taken to continue this suit by reason of the last sentence of § 205(g) of the Act.

Appeals Council, which denied Plaintiff's request.  Tr. 1-7.  As such, the ALJ's decision stands as the final decision of the Commissioner.

## II.
## LEGAL STANDARDS

Under the Social Security Act, the Commissioner has established a five-step process for determining whether a person is disabled.  20 C.F.R. §§ 416.920, 404.1529.  "'If a claimant fails to meet the criteria at any step in the evaluation of disability, the process ends and the claimant is determined to be not disabled.'"  Goff v. Barnhart, 421 F.3d 785, 790 (8th Cir. 2005) (quoting Eichelberger v. Barnhart, 390 F.3d 584, 590-91 (8th Cir. 2004)).  In this sequential analysis, the claimant first cannot be engaged in "substantial gainful activity" to qualify for disability benefits.  20 C.F.R. §§ 416.920(b), 404.1520(b).  Second, the claimant must have a severe impairment.  20 C.F.R. §§ 416.920(c), 404.1520(c).  The Social Security Act defines "severe impairment" as "any impairment or combination of impairments which significantly limits [claimant's] physical or mental ability to do basic work activities."  Id.  "The sequential evaluation process may be terminated at step two only when the claimant's impairment or combination of impairments would have no more than a minimal impact on [his or] her ability to work."  Page v. Astrue, 484 F.3d 1040, 1043 (8th Cir. 2007) (quoting Caviness v. Massanari, 250 F.3d 603, 605 (8th Cir. 2001) (citing Nguyen v. Chater, 75 F.3d 429, 430-31 (8th Cir. 1996)).

Third, the ALJ must determine whether the claimant has an impairment which meets or equals one of the impairments listed in the Regulations.  20 C.F.R. §§ 416.920(d), 404.1520(d); pt. 404, subpt. P, app. 1.  If the claimant has one of, or the medical equivalent of, these impairments, then the claimant is per se disabled without consideration of the claimant's age, education, or work history.  See id.

Fourth, the impairment must prevent the claimant from doing past relevant work. 20 C.F.R. §§ 416.920(f), 404.1520(f). The burden rests with the claimant at this fourth step to establish his or her Residual Functional Capacity ("RFC"). See Steed v. Astrue, 524 F.3d 872, 874 n.3 (8th Cir. 2008) ("Through step four of this analysis, the claimant has the burden of showing that she is disabled."); Eichelberger, 390 F.3d at 590-91; Masterson v. Barnhart, 363 F.3d 731, 737 (8th Cir. 2004); Young v. Apfel, 221 F.3d 1065, 1069 n.5 (8th Cir. 2000). The ALJ will review a claimant's RFC and the physical and mental demands of the work the claimant has done in the past. 20 C.F.R. § 404.1520(f).

Fifth, the severe impairment must prevent the claimant from doing any other work. 20 C.F.R. §§ 416.920(g), 404.1520(g). At this fifth step of the sequential analysis, the Commissioner has the burden of production to show evidence of other jobs in the national economy that can be performed by a person with the claimant's RFC. See Steed, 524 F.3d at 874 n.3; Young, 221 F.3d at 1069 n.5. If the claimant meets these standards, the ALJ will find the claimant to be disabled. "The ultimate burden of persuasion to prove disability, however, remains with the claimant." Id. See also Harris v. Barnhart, 356 F.3d 926, 931 n.2 (8th Cir. 2004) (citing 68 Fed. Reg. 51153, 51155 (Aug. 26, 2003)); Stormo v. Barnhart, 377 F.3d 801, 806 (8th Cir. 2004) ("The burden of persuasion to prove disability and to demonstrate RFC remains on the claimant, even when the burden of production shifts to the Commissioner at step five."); Charles v. Barnhart, 375 F.3d 777, 782 n.5 (8th Cir. 2004) ("[T]he burden of production shifts to the Commissioner at step five to submit evidence of other work in the national economy that [the claimant] could perform, given her RFC."). Even if a court finds that there is a preponderance of the evidence against the ALJ's decision, that decision must be affirmed if it is supported by substantial evidence. See Clark v. Heckler, 733 F.2d 65, 68 (8th Cir. 1984).

"Substantial evidence is less than a preponderance but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusion." Krogmeier v. Barnhart, 294 F.3d 1019, 1022 (8th Cir. 2002). See also Cox v. Astrue, 495 F.3d 614, 617 (8th Cir. 2007). In Bland v. Bowen, 861 F.2d 533, 535 (8th Cir. 1988), the Eighth Circuit Court of Appeals held:

> [t]he concept of substantial evidence is something less than the weight of the evidence and it allows for the possibility of drawing two inconsistent conclusions, thus it embodies a zone of choice within which the Secretary may decide to grant or deny benefits without being subject to reversal on appeal.

See also Lacroix v. Barnhart, 465 F.3d 881, 885 (8th Cir. 2006) ("[W]e may not reverse merely because substantial evidence exists for the opposite decision.") (quoting Johnson v. Chater, 87 F.3d 1015, 1017 (8th Cir. 1996)); Hartfield v. Barnhart, 384 F.3d 986, 988 (8th Cir. 2004) ("[R]eview of the Commissioner's final decision is deferential.").

It is not the job of the district court to re-weigh the evidence or review the factual record de novo. See Cox, 495 F.3d at 617; Guilliams v. Barnhart, 393 F.3d 798, 801 (8th Cir. 2005); McClees v. Shalala, 2 F.3d 301, 302 (8th Cir. 1993); Murphy v. Sullivan, 953 F.2d 383, 384 (8th Cir. 1992). Instead, the district court must simply determine whether the quantity and quality of evidence is enough so that a reasonable mind might find it adequate to support the ALJ's conclusion. See Davis v. Apfel, 239 F.3d 962, 966 (8th Cir. 2001) (citing McKinney v. Apfel, 228 F.3d 860, 863 (8th Cir. 2000)). Weighing the evidence is a function of the ALJ, who is the fact-finder. Benskin v. Bowen, 830 F.2d 878, 882 (8th Cir. 1987). See also Onstead v. Sullivan, 962 F.2d 803, 804 (8th Cir. 1992) (holding that an ALJ's decision is conclusive upon a reviewing court if it is supported by "substantial evidence"). Thus, an administrative decision which is supported by substantial evidence is not subject to reversal merely because substantial evidence may also support an opposite conclusion or because the reviewing court would have decided

differently.  See Krogmeier, 294 F.3d at 1022.  See also Eichelberger,  390 F.3d at 589; Nevland v. Apfel, 204 F.3d 853, 857 (8th Cir. 2000) (quoting Terrell v. Apfel, 147 F.3d 659, 661 (8th Cir. 1998)); Hutsell v. Massanari, 259 F.3d 707, 711 (8th Cir. 2001).

To determine whether the Commissioner's final decision is supported by substantial evidence, the court is required to review the administrative record as a whole and to consider:

> (1) Findings of credibility made by the ALJ;
>
> (2) The education, background, work history, and age of the claimant;
>
> (3) The medical evidence given by the claimant's treating physicians;
>
> (4) The subjective complaints of pain and description of the claimant's physical activity and impairment;
>
> (5) The corroboration by third parties of the claimant's physical impairment;
>
> (6) The testimony of vocational experts based upon proper hypothetical questions which fairly set forth the claimant's physical impairment; and
>
> (7) The testimony of consulting physicians.

Brand v. Sec'y of Dep't of Health, Educ. & Welfare, 623 F.2d 523, 527 (8th Cir. 1980); Cruse v. Bowen, 867 F.2d 1183, 1184-85 (8th Cir. 1989).

Additionally, an ALJ's decision must comply "with the relevant legal requirements." Ford v. Astrue, 518 F.3d 979, 981 (8th Cir. 2008).

The Social Security Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 416(i)(1)(A); 42 U.S.C. § 423(d)(1)(A).  "While the claimant has the burden of proving that the disability results from a medically determinable physical or mental impairment, direct medical evidence of the cause and effect relationship

between the impairment and the degree of claimant's subjective complaints need not be produced." Polaski v. Heckler, 739 F.2d 1320, 1322 (8th Cir. 1984). When evaluating evidence of pain, the ALJ must consider:

> (1) the claimant's daily activities;
>
> (2) the subjective evidence of the duration, frequency, and intensity of the claimant's pain;
>
> (3) any precipitating or aggravating factors;
>
> (4) the dosage, effectiveness, and side effects of any medication; and
>
> (5) the claimant's functional restrictions.

Baker v. Sec'y of Health & Human Servs., 955 F.2d. 552, 555 (8th Cir. 1992); Polaski, 739 F.2d at 1322. The absence of objective medical evidence is just one factor to be considered in evaluating the plaintiff's credibility. Id. The ALJ must also consider the plaintiff's prior work record, observations by third parties and treating and examining doctors, as well as the plaintiff's appearance and demeanor at the hearing. See Polaski, 739 F.2d at 1322; Cruse, 867 F.2d at 1186.

The ALJ must make express credibility determinations and set forth the inconsistencies in the record which cause him to reject the plaintiff's complaints. See Guilliams, 393 F.3d at 801; Masterson, 363 F.3d at 738; Lewis v. Barnhart, 353 F.3d 642, 647 (8th Cir. 2003); Hall v. Chater, 62 F.3d 220, 223 (8th Cir. 1995). It is not enough that the record contains inconsistencies; the ALJ must specifically demonstrate that he considered all of the evidence. See Robinson v. Sullivan, 956 F.2d 836, 841 (8th Cir. 1992); Butler v. Sec'y of Health & Human Servs., 850 F.2d 425, 429 (8th Cir. 1988). The ALJ, however, "need not explicitly discuss each Polaski factor." Strongson v. Barnhart, 361 F.3d 1066, 1072 (8th Cir. 2004). See also Steed,

524 F.3d at 876 (citing <u>Lowe v. Apfel</u>, 226 F.3d 969, 972 (8th Cir. 2000)). The ALJ need only acknowledge and consider those factors. <u>See</u> <u>id.</u> Although credibility determinations are primarily for the ALJ and not the court, the ALJ's credibility assessment must be based on substantial evidence. <u>See</u> <u>Rautio v. Bowen</u>, 862 F.2d 176, 179 (8th Cir. 1988); <u>Millbrook v. Heckler</u>, 780 F.2d 1371, 1374 (8th Cir. 1985).

RFC is defined as what the claimant can do despite his or her limitations, 20 C.F.R. § 404.1545(a)(1), and includes an assessment of physical abilities and mental impairments. 20 C.F.R. § 404.1545(b)-(e). The Commissioner must show that a claimant who cannot perform his or her past relevant work can perform other work which exists in the national economy. <u>See</u> <u>Karlix v. Barnhart</u>, 457 F.3d 742, 746 (8th Cir. 2006); <u>Nevland</u>, 204 F.3d at 857 (citing <u>McCoy v. Schweiker</u>, 683 F.2d 1138, 1146-47 (8th Cir. 1982) (en banc)). The Commissioner must first prove that the claimant retains the RFC to perform other kinds of work. <u>See</u> <u>Goff</u>, 421 F.3d at 790; <u>Nevland</u>, 204 F.3d at 857. The Commissioner has to prove this by substantial evidence. <u>Warner v. Heckler</u>, 722 F.2d 428, 431 (8th Cir. 1983). Second, once the plaintiff's capabilities are established, the Commissioner has the burden of demonstrating that there are jobs available in the national economy that can realistically be performed by someone with the plaintiff's qualifications and capabilities. <u>See</u> <u>Goff</u>, 421 F.3d at 790; <u>Nevland</u>, 204 F.3d at 857.

To satisfy the Commissioner's burden, the testimony of a vocational expert ("VE") may be used. An ALJ posing a hypothetical to a VE is not required to include all of a plaintiff's limitations, but only those which he finds credible. <u>See</u> <u>Goff</u>, 421 F.3d at 794 ("[T]he ALJ properly included only those limitations supported by the record as a whole in the hypothetical."); <u>Rautio</u>, 862 F.2d at 180. Use of the Medical-Vocational Guidelines is appropriate if the ALJ discredits the plaintiff's subjective complaints of pain for legally sufficient

reasons.  See Baker v. Barnhart, 457 F.3d 882, 894-95 (8th Cir. 2006); Carlock v. Sullivan, 902

F.2d 1341, 1343 (8th Cir. 1990); Hutsell v. Sullivan, 892 F.2d 747, 750 (8th Cir. 1989).

### III.
### DISCUSSION

The issue before the court is whether substantial evidence supports the Commissioner's

final determination that Plaintiff was not disabled.  See Onstead, 962 F.2d at 804.  Thus, even if

there is substantial evidence that would support a decision opposite to that of the Commissioner,

the court must affirm her decision as long as there is substantial evidence in favor of the

Commissioner's position.  See Cox, 495 F.3d at 617; Krogmeier, 294 F.3d at 1022.

Plaintiff was born in 1979 and has a high school education.  She has one child, a daughter

who was five years old as of July 2010.  She testified she was sexually abused when she was

fourteen years old; she was raped as a teenager; she had problems with nightmares; she smoked

marijuana when someone else had it; the day prior to the hearing she smoked marijuana; and she

enjoyed reading.  Tr. 31-36.  Plaintiff claimed her physical problems included diabetes, seizures,

headaches, muscle spasms, back pain, chronic obstructive pulmonary disease (COPDP), and

chronic bronchitis, and that she had psychological conditions.

At the supplemental hearing, the ALJ called Anne E. Winkler, M.D., and Karyn Perry,

Ph.D., as medical experts, and Darrell W. Taylor, Ph.D., a VE.  The ALJ found Plaintiff had not

engaged in substantial gainful activity since September 5, 2008, her amended onset date; she had

the severe impairments of diabetes, seizures, headaches, back pain, and mood and anxiety

disorders; and she did not have an impairment or combination of impairments that met or

medically equaled a listed impairment.  The ALJ further found Plaintiff had the RFC to lift 20

pounds occasionally and 10 pounds frequently; she could sit, stand, and walk for six hours in an

8-hour workday; she could not climb ladders, ropes or scaffolding; she could no more than

occasionally climb stairs; she must avoid unprotected heights; and she was limited to simple, repetitive tasks with limited interactions with supervisors and coworkers and a low stress work environment. The ALJ concluded that there was work in the national economy which a person of Plaintiff's age with Plaintiff's education, work experience, and RFC could perform, and that, therefore, Plaintiff was not disabled.

Plaintiff argues that the ALJ's decision is not based on substantial evidence because she met the listings for peripheral neuropathy and diabetes; the ALJ incorrectly relied on Plaintiff's failure to comply with prescribed medical treatment for diabetes when finding her not disabled; the ALJ failed to consider evidence regarding the combination of Plaintiff's impairments; the ALJ failed to submit a hypothetical to the VE which included the combination of Plaintiff's limitations and impairments; witnesses at the supplemental hearing did not have the benefit of considering the opinion and records of Shahid K. Choudhary, M.D., who examined Plaintiff after the hearing; and the ALJ failed to fully develop the record.

## A.      Plaintiff's Credibility:

The court will first consider the ALJ's credibility determination, as the ALJ's evaluation of Plaintiff's credibility was essential to the ALJ's determination of other issues, including Plaintiff's RFC.  See Wildman v. Astrue, 596 F.3d 959, 969 (8th Cir. 2010) ("[The plaintiff] fails to recognize that the ALJ's determination regarding her RFC was influenced by his determination that her allegations were not credible.") (citing Tellez v. Barnhart, 403 F.3d 953, 957 (8th Cir. 2005)); 20 C.F.R. §§ 404.1545, 416.945 (2010).  As set forth more fully above, the ALJ's credibility findings should be affirmed if they are supported by substantial evidence on the record as a whole; a court cannot substitute its judgment for that of the ALJ.  Guilliams v. Barnhart, 393 F.3d 798, 801 (8th Cir. 2005); Hutsell, 892 F.2d at 750; Benskin, 830 F.2d at 882.

To the extent that the ALJ did not specifically cite Polaski, other case law, and/or Regulations relevant to a consideration of Plaintiff's credibility, this is not necessarily a basis to set aside an ALJ's decision where the decision is supported by substantial evidence. Randolph v. Barnhart, 386 F.3d 835, 842 (8th Cir. 2004); Wheeler v. Apfel, 224 F.3d 891, 895 n.3 (8th Cir. 2000); Reynolds v. Chater, 82 F.3d 254, 258 (8th Cir. 1996); Montgomery v. Chater, 69 F.3d 273, 275 (8th Cir. 1995).

Additionally, an ALJ need not methodically discuss each Polaski factor if the factors are acknowledged and examined prior to making a credibility determination; where adequately explained and supported, credibility findings are for the ALJ to make. See Lowe v. Apfel, 226 F.3d 969, 972 (8th Cir. 2000). See also Tucker v. Barnhart, 363 F.3d 781, 783 (8th Cir. 2004) ("The ALJ is not required to discuss each Polaski factor as long as the analytical framework is recognized and considered."); Strongson, 361 F.3d at 1072; Brown v. Chater, 87 F.3d 963, 966 (8th Cir. 1996). In any case, "[t]he credibility of a claimant's subjective testimony is primarily for the ALJ to decide, not the courts." Pearsall v. Massanari, 274 F.3d 1211, 1218 (8th Cir. 2001). "If an ALJ explicitly discredits the claimant's testimony and gives good reason for doing so, [a court] will normally defer to the ALJ's credibility determination." Gregg v. Barnhart, 354 F.3d 710, 714 (8th Cir. 2003). For the following reasons, the court finds that the reasons offered by the ALJ in support of his credibility determination are based on substantial evidence.

First, the ALJ considered that Plaintiff did not require as many emergency room visits as her allegations regarding difficulty in controlling her diabetes suggested. Tr. 17. The ALJ also noted that, when Plaintiff went to the emergency room in 2008, she was discharged in less than one day. Tr. 15, 309. A lack of regular treatment for an alleged disabling condition detracts from a claimant's credibility. See Roberts v. Apfel, 222 F.3d 466, 469 (8th Cir. 2000) (citing

Dixon v. Sullivan, 905 F.2d 237, 238 (8th Cir. 1990)); Comstock v. Chater, 91 F.3d 1143, 1146-46 (8th Cir. 1996) (citing Benskin, 830 F.2d at 884); Polaski, 739 F.2d at 1322.

Second, the ALJ considered that although Plaintiff described difficulties in performing daily activities, she stated, in a function report, that she prepared meals, drove, shopped, and paid bills. Tr. 17. The court notes Plaintiff also reported that she took care of her daughter and children; she could do laundry and dishes; she would go outside every day, unless she was "real sick"; and she could go out alone. Tr. 225-30. As considered by the ALJ, Plaintiff told consultive examiner Jonathan D. Rosenboom, Psy.D., when he examined her, on December 12, 2008, that her daily activities centered around caring for her three-year old daughter; she kept her and her daughter's area of the house clean, although her mother, with whom she lived, employed a cleaning lady; and she took care of her personal hygiene on a routine and daily basis. Tr. 349-50. Also, in August and September 2010, Plaintiff told Dr. Rosenboom that she cleaned, did laundry, and grocery shopped. Tr. 464-78.

While the undersigned appreciates that a claimant need not be bedridden before she can be determined to be disabled, Plaintiff's daily activities can nonetheless be seen as inconsistent with her subjective complaints of a disabling impairment and may be considered in judging the credibility of complaints. See Eichelberger v. Barnhart, 390 F.3d 584, 590 (8th Cir. 2004) (ALJ properly considered that plaintiff watched television, read, drove, and attended church upon concluding that subjective complaints of pain were not credible); Dunahoo v. Apfel, 241 F.3d 1033, 1038 (8th Cir. 2001); Onstead, 962 F.2d at 805. Indeed, the Eighth Circuit holds that allegations of disabling "pain may be discredited by evidence of daily activities inconsistent with such allegations." Davis v. Apfel, 239 F.3d 962, 967 (8th Cir. 2001). "Inconsistencies between [a claimant's] subjective complaints and [his] activities diminish [his] credibility." Goff, 421

F.3d at 792. See also Haley v. Massanari, 258 F.3d 742, 748 (8th Cir. 2001); Nguyen v. Chater, 75 F.3d 429, 439-41 (8th Cir. 1996) (holding that a claimant's daily activities, including visiting neighbors, cooking, doing laundry, and attending church, were incompatible with disabling pain and affirming denial of benefits at the second step of the analysis).

Third, although Plaintiff alleged a mental impairment, she reported she spent time with others, including "inperson visiting"; she read; she could pay bills, count change, handle a savings account, and use a check book, although her mother helped her manage money; she did not have any problems getting along with family, friends and neighbors; and she could pay attention "pretty good" and could follow written instructions "good." Tr. 225-30. She also told Dr. Rosenboom that she read, watched television, took care of her personal hygiene, including bathing and changing her clothing twice daily. Tr. 466.

Fourth, the ALJ considered that the medical records failed to support Plaintiff's claims regarding the severity of her impairments. Tr. 17. See Constock v. Chater, 91 F.3d 1143, 1147 (8th Cir. 1996) (citing Smith v. Shalala, 987 F.2d 1371, 1374 (8th Cir.1993) (ALJ properly discounted a claimant's complaints of pain when the medical evidence failed to establish a significant back problem); Orrick v. Sullivan, 966 F.2d 368, 372 (8th Cir. 1992) (ALJ may discredit a claimant's subjective complaints where there are inconsistencies in the record; the ALJ may give more weight to the medical records than to a claimant's testimony); Russell v. Sullivan, 950 F.2d 542, 545 (8th Cir. 1991). As for her diabetes, the ALJ noted that examinations did not reveal significant loss of sensation due to diabetic neuropathy. Tr. 17. As considered by the ALJ, D.K. Varma, M.D., who saw Plaintiff for a variety of complaints through August 2008, rarely indicated she had significant signs of complications related to diabetes. Tr. 288-300. As also considered by the ALJ, although Plaintiff went to the Samuel Medical Clinic

for carious complaints, and it was noted at various times that she had blood sugar problems, the health care professionals did not observe she had signs of diabetic complications. Tr. 16, 376-83.

As for her mental impairments, the ALJ considered records failed to show Plaintiff had difficulty interacting with others. Tr. 17. As noted by the ALJ, Dr. Varma reported, in 2008, that Plaintiff had normal mood, was oriented, and good judgment and memory. Tr. 26, 288, 291. Also, Dr. Rosenboom reported, in December 2008, that Plaintiff made adequate eye contact; she was an articulate speaker, whose range of vocabulary was not limited and whose grammar was good; her thoughts flowed evenly, logically, and in a goal-directed manner; she was alert and attentive; her concentration and mental control were unimpaired when she completed the Serial Sevens task without error; her delayed auditory recall was slightly impaired, but this was likely due to anxiety during the interview; and she denied hallucinations but stated she had panic attacks. Dr. Rosenboom opined in December 2008, that Plaintiff's ability to understand, remember, and carry out instructions and her ability to respond appropriately to work supervisors, coworkers, and work stressors was not impaired by her mental disorder. Tr. 349-51. In September 2010, Dr. Rosenboom reported, pursuant to examination, that Plaintiff did not evidence "any signs of a formal thought disorder"; she was alert and attentive, although she was passive and socially avoidant; and testing showed Plaintiff had a full scale IQ of 84, placing her in the low average range. Dr. Rosenboom opined that Plaintiff's ability to understand, remember, and carry out instructions was not impaired by her mental disorders; her ability to respond appropriately to work stressors was moderately impaired by her mental disorders; she had mild limitations in regard to interacting appropriately with the public, supervisors and coworkers; and Plaintiff did have the capacity to manage her finances. Tr. 466-74. A Social

Security interviewer noted that, during an interview, Plaintiff did not have difficulties in understanding, coherency, concentrating, talking, or answering; and she was pleasant and polite, well-prepared for the interview, and was able to answer all questions without difficulty. Tr. 214.

As for Plaintiff's claim of exertional limitations, Dr. Varma repeatedly noted, in 2008, in regard to Plaintiff's musculoskeletal system, that Plaintiff had full range of motion, and no tenderness or edema. Tr. 288, 291, 296. In January 2009, Plaintiff's neurological examination was "non-focal" and she had no edema in her extremities. Tr. 449. March and April 2010 records from the Ripley County Family Clinic reflect that Plaintiff had normal gait and posture. Tr. 386-87. K.A. Schisler, D.O., who examined Plaintiff in August 2010, reported that all of Plaintiff's range of motions were within normal limits; she had no difficulty getting on and off the exam table; she could squat and get back up; her bilateral muscle strength in both upper and lower extremities was 5/5; Plaintiff had no muscle atrophy; she had no neurologic deficits in fine finger movement; her gait was within normal limits; her reflexes were 2+, bilaterally, in the lower and upper extremities; Plaintiff's lungs were clear, with no wheezes or rales; her neck was supple; and her abdomen was soft and nontender. Tr. 454-55. Dr. Schisler opined that Plaintiff could frequently lift 20 pounds, and occasionally lift up to 50 pounds; she could sit for 30-45 minutes, stand 15 minutes, and walk 20 minutes at a time; in an 8-hour workday, Plaintiff could sit a total of 4 hours and stand and walk a total of 2 hours each; she could continually use her hands to reach, handle, finger, feel, and push/pull; she could frequently use foot controls; she could never climb ladders or balance; she could frequently stoop, kneel, crouch, and crawl; she could never tolerate unprotected heights or moving mechanical parts; she could frequently tolerate exposure to humidity, extreme cold and heat, and vibrations; and she could sort, handle,

and use paper/files. Tr. 45-63. Even Dr. Choudhary, upon whose opinion Plaintiff heavily relies, reported that Plaintiff's motor strength was intact and that her gait was normal. Tr. 480.

Fifth, when Plaintiff was hospitalized for diabetic ketoacidosis, in January 2009, it was noted she was noncompliant with her medications and diet. Tr. 449. See Eichelberger, 390 F.3d at 589 (ALJ properly considered that plaintiff cancelled several physical therapy appointments and that no physician imposed any work-related restrictions on her) (citing Brown v. Chater, 87 F.3d 963, 965 (8th Cir. 1996) (claimant's failure to comply with prescribed medical treatment and lack of significant medical restrictions is inconsistent with complaints of disabling pain). As for Plaintiff's argument that her mental impairment should excuse her noncompliance, simply having a mental disorder does not excuse noncompliance. See Wildman v. Astrue, 596 F.3d 959, 966 (8th Cir. 2010) (noting noncompliant claimant suffered from depression, not schizoaffective disorder). In any case, Plaintiff has suggested no evidence to support her claim that her depression prevented her from understanding the necessity to maintain proper diet and to take medications as prescribed.

Sixth, when Plaintiff was hospitalized for diabetic ketoacidosis, in January 2009, she got better with IV fluids and an insulin drip. Tr. 449. See Brown v. Astrue, 611 F.3d 941, 955 (8th Cir. 2010) (conditions which can be controlled by treatment are not disabling); Davidson v. Astrue, 578 F.3d 838, 846 (8th Cir. 2009); Medhaug v. Astrue, 578 F.3d 805, 813 (8th Cir. 2009); Schultz v. Astrue, 479 F.3d 979, 983 (8th Cir. 2007) (if impairments can be controlled by treatment, they cannot be considered disabling).

Seventh, although Plaintiff argues she had multiple hospitalizations for diabetic ketoacidosis and although January 2009 hospital discharge records state Plaintiff "had multiple admissions in the past for diabetic ketoacidosis (Tr. 449), the record from the relevant period

reflects, as discussed above, only one such instance. When she was hospitalized at the time of the second hearing, it was for pneumonia, not ketoacidosis. Tr. 42, 46.

**B.      Plaintiff's Failure to Meet Listing 9.08 or Listing 11.14:**

Plaintiff argues the ALJ erred in failing to find she met or medically equaled Listing 9.08, the prior listing for diabetes, or Listing 11.14, the listing for peripheral neuropathy.[2] As stated by the Eighth Circuit:

> The listing for presumptively disabling diabetes requires a showing of a diabetes diagnosis with "[n]europathy demonstrated by significant and persistent disorganization of motor function in two extremities resulting in sustained disturbance of gross and dexterous movements, or gait and station." 20 C.F.R. pt. 404, subpt. P, app. 1 § 9.08(A). Peripheral neuropathy is presumptively disabling as a neurological disorder with a showing of significant and persistent disorganization of motor function in two extremities, resulting in sustained disturbance of gross and dexterous movements, or gait and station. See id. § 11.14.

Cunningham v. Apfel, 222 F.3d 496, 502 n.8 (8th Cir. 2000).

Additionally, to meet or medically equal the listing for diabetes, a claimant had to meet the following criteria:

> Diabetes mellitus. With:
>
> A. Neuropathy demonstrated by significant and persistent disorganization of motor function in two extremities resulting in sustained disturbance of gross and dexterous movements, or gait and station (see 11.00C); or
>
> B. Acidosis occurring at least on the average of once every 2 months documented by appropriate blood chemical tests (pH or pCO2 or bicarbonate levels); or
>
> C. Retinitis proliferans; evaluate the visual impairment under the criteria in 2.02, 2.03, or 2.04.

20 C.F.R. Part 404, Subpart P, Appendix 1 § 9.08.

---

[2] The individual listing for diabetes was rescinded, effective June 7, 2011. See 76 Fed. Reg. 19692 (Apr. 8, 2011).

Upon finding Plaintiff did not meet Listing 9.08, the ALJ found the medical evidence failed to show the severity of signs and symptoms required. Tr. 13. Indeed, as required by Listing 9.08, there was no evidence indicating Plaintiff had episodes of acidosis at least every two months; and there was no evidence of neuropathy resulting in significant and persistent disorganization of motor function in two extremities resulting in sustained disturbance of gross and dexterous movements, or gait and station. Notably, when Plaintiff was hospitalized for a urinary tract infection in October 2007, she had no neurological deficits. Tr. 452. When she was hospitalized, in January 209, for ketoacidosis, Plaintiff's neurological examination was "non-focal." Tr. 449. In August 2010, neurological examination showed Plaintiff had normal gait, reflexes, and was able to heel/toe tandem walk, stand on her toes, and stand on her heels. Tr. 455. In January 2011, although Dr. Choudhary reported Plaintiff had peripheral neuropathy, he further reported that she had only "mild" weakness of the lower extremities; her gait was normal; and there was no evidence of lumbar radiculopathy on nerve conduction studies. At that point, Dr. Choudhary started Plaintiff on Neurontin, and recommended she have good control of her blood sugars. Tr. 479-80. The court finds, therefore, that the ALJ's determination that Plaintiff did not meet or medically equal Listing 9.08 is supported by substantial evidence.

As for Plaintiff's meeting Listing 11.14, as discussed above, there was no evidence that Plaintiff's peripheral neuropathy resulted in sustained disturbance of gross and dexterous movements, or gait and station. See 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 11.04. The court finds, therefore, that the ALJ's determination that Plaintiff did not meet or medically equal Listing 11.14 is supported by substantial evidence.

**C. Plaintiff's RFC:**

Plaintiff argues the ALJ did not consider the combined effects of her impairments when determining her RFC. The court finds, however, that the record sufficiently demonstrates that the ALJ did so prior to determining Plaintiff's RFC. In this regard, the ALJ separately addressed each of Plaintiff's alleged impairments, including her diabetes, back pain, headaches, seizure disorder, and mental impairments, and considered the relevant medical records, Plaintiff's testimony, and other evidence of record. See Martise, 641 F.3d at 924 (ALJ did not fail to consider the combination of claimant's impairments where he fully summarized all medical records, discussed each of her alleged impairments, and expressly found that claimant did not have impairment or combination of impairments that met or medically equaled any listed impairment). As discussed above in regard to Plaintiff's credibility and the ALJ's consideration of Listings 9.08 and 11.l4, the ALJ considered the signs and symptoms of Plaintiff's alleged disabling conditions, including the medical records and Plaintiff's self-reporting of her symptoms. Tr. 13. He further considered the extent to which Plaintiff's symptoms could reasonably be consistent with the objective medical evidence as well as opinion evidence. Only after doing so did the ALJ determine Plaintiff's RFC.

Although Plaintiff argues the ALJ did not consider Dr. Choudhary's January 26, 2011 report when determining her RFC, the record does not reflect the ALJ received this report prior to issuing his decision. Indeed, at Plaintiff's second hearing, the ALJ refused to hold the record open until Plaintiff submitted a report from Dr. Choudhary, over two years had passed since Plaintiff first requested a hearing and approximately six months had transpired from Plaintiff's first hearing. Thus, the court finds the ALJ did not abuse his discretion by refusing to keep the record open. See 20 C.F.R. 416.1444 (ALJ has discretion whether to hold record open for

further proceedings). Even if the ALJ should have held the record open, any such error is harmless, as the Appeals Council did consider Dr. Choudhary's report, and determined that the report did not provide a basis for changing the ALJ's decision. Notably, as discussed above, Dr. Choudhary reported only that Plaintiff had minimal peripheral neuropathy, and it was not until Plaintiff saw Dr. Choudhary that she was prescribed Neurontin. See Hepp v. Astrue, 511 F.3d 798, 806 (8th Cir. 2008) (ALJ's deficiency did not require reversal since it had no bearing on outcome).

To the extent Plaintiff argues the ALJ did not consider the history of her mental illnesses when determining her RFC, the ALJ did restrict Plaintiff's RFC so that she was limited to simple repetitive tasks with limited interaction with others, as well low stress situations. The ALJ did consider, in detail, medical records relevant to Plaintiff's mental impairments, including reports of treating, examining and consulting doctors. Upon doing so he was not required to rely entirely upon the opinion of a single source. Rather, consistent with the case law, the ALJ considered the record as a whole. See Martise, 641 F.3d 927 ("[T]he ALJ [was] not required to rely entirely on a particular physician's opinion or choose between the opinions [of] any of the claimant's physician's opinions."). Even if the ALJ did not address every specific entry into Plaintiff's mental health records, the ALJ's failure to do so does not indicate that he failed to consider such evidence. See Montgomery v. Chater, 69 F.3d 273, 275 (8th Cir. 1995). See also Karlix v. Barnhart, 457 F.3d 742, 746 (8th Cir. 2006) ("The fact that the ALJ did not elaborate on this conclusion does not require reversal, because the record supports her overall conclusion.") (citations omitted). In any case, the ALJ was not required to discuss every piece of evidence. See Wildman, 596 F.3d at 966 (although ALJ is required to fully develop record, he is not required to discuss every piece of evidence); Wheeler v. Apfel, 224 F.3d 891, 896 n.3 (8th Cir.

2000) (citing <u>Black v. Apfel</u>, 143 F.3d 383, 386 (8th Cir. 1998) (ALJ is not required to discuss every piece of evidence submitted; "ALJ's failure to cite specific evidence does not indicate that such evidence was not considered.").

Although Plaintiff argues the ALJ should have developed the record further, the Commissioner did order consultive examinations and Dr. Winkler and Dr. Perry were called to testify at the second hearing. See <u>Barrett v. Shalala</u>, 38 F.3d 1019, 1023 (8th Cir. 1994) (citing <u>Conley v. Bowen</u>, 781 F.2d 143, 146 (8th Cir.1986)) ("ALJ is required to order medical examinations and tests only if the medical records presented to [her] do not give sufficient medical evidence to determine whether the claimant is disabled."). Moreover, there was sufficient evidence for the ALJ to make a determination as to whether Plaintiff was disabled. See <u>Landess v. Weinberger</u>, 490 F.2d 1187, 1189 (8th Cir. 1974) (ALJ need not develop record further where it is "sufficiently clear to make a fair determination as to whether the claimant is disabled or not"). The court finds that Plaintiff has not demonstrated that "a crucial issue [was] undeveloped" or that the ALJ's failure to develop the record even further than he did was prejudicial. <u>Ellis v. Barnhart</u>, 392 F.3d 988, 994 (8th Cir. 2005). As such, Plaintiff's argument that the ALJ failed to sufficiently develop the record is without merit.

In conclusion, the court finds that the ALJ's RFC determination is based on substantial evidence, and that it is consistent with the Regulations and case law, and that all arguments made by Plaintiff to the contrary are without merit.

**D.    Testimony of VE:**

The ALJ posed a hypothetical to a VE which included the RFC which the ALJ assigned to Plaintiff; it included all of Plaintiff's limitations which the ALJ found credible. The VE testified that there was work in the national economy which a person of Plaintiff's age and with

her education and RFC could perform.  Thus, the ALJ found Plaintiff not disabled.  Although

Plaintiff argues the hypothetical posed to the VE was insufficient, the ALJ was only required to

include limitations in the hypothetical which he found credible.  Thus, the hypothetical submitted

to the VE was properly formulated.  See Martise v. Astrue, 641 F.3d 909, 927 (8th Cir. 2011)

(ALJ's hypothetical question to VE needs to include only those impairments that ALJ finds are

substantially supported by record as a whole); Guilliams v. Barnhart, 393 F.3d 789, 804 (8th Cir.

2005) (proper hypotheticals set forth impairments supported by substantial evidence and

accepted as true by ALJ).  Thus, the ALJ was not required to include further limitations as

suggested by Plaintiff.  See Haggard v. Apfel, 175 F.3d 591, 595 (8th Cir. 1999) (ALJ need not

include additional complaints in hypothetical not supported by substantial evidence); Hunt v.

Massanari, 250 F.3d 622, 625 (8th Cir. 2001).  Finally, the VE's testimony that there was work

in the national economy which Plaintiff could perform provided substantial evidence to support

the ALJ's determination that Plaintiff was not disabled.  See Martise, 641 F.3d at 927 ("Based on

our previous conclusion ... that 'the ALJ's findings of [the claimant's] RFC are supported by

substantial evidence,' we hold that '[t]he hypothetical question was therefore proper, and the

VE's answer constituted substantial evidence supporting the Commissioner's denial of

benefits.'") (quoting Lacroix v. Barnhart, 465 F.3d 881, 889 (8th Cir. 2006)); Robson v. Astrue,

526 F.3d 389, 392 (8th Cir. 2008) (VE's testimony is substantial evidence when it is based on an

accurately phrased hypothetical capturing concrete consequences of claimant's limitations);

Wingert v. Bowen, 894 F.2d 296, 298 (8th Cir. 1990).

## IV.
## CONCLUSION

For the reasons set forth above, the court finds that substantial evidence on the record as a

whole supports Commissioner's decision that Plaintiff is not disabled.

Accordingly,

**IT IS HEREBY ORDERED** that the relief sought by Plaintiff in her Complaint and Brief in Support of Complaint is **DENIED**; Docs. 1, 16.

**IT IS ORDERED** that a separate judgment be entered incorporating this Memorandum and Opinion.

Dated this 21st day of July, 2014.

/s/Noelle C. Collins
UNITED STATES MAGISTRATE JUDGE